MARIE LOUISE AUDETTE GOULET, EXECUTRIX, *vs.* CHASE COMPANIES, INCORPORATED.

LUDGER HAMEL *vs.* CHASE COMPANIES, INCORPORATED.

First Judicial District, Hartford, October Term, 1930.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 9th—decided November 7th, 1930.

*Ralph O. Wells,* for the appellants (plaintiffs.)

*William D. Shew,* for the appellee (defendant).

BANKS, J.   These cases, which were tried together, arose out of a rear-end collision between an automobile owned and operated by the plaintiff Hamel and the defendant's truck.   Joseph Audette, the decedent of the plaintiff Goulet, Executrix, was an occupant of the automobile, and was killed as a result of the collision. The car of the plaintiff Hamel was descending Southington Mountain, a long and unusually heavy grade, upon a newly constructed concrete road which was straight for a long distance.   When about half way down the descent, upon a straight section of the road, it crashed into the rear of the defendant's truck, which was proceeding in the same direction in low gear at a speed of between five and six miles an hour.   The plaintiff claimed that the collision was caused by the failure of the defendant to display any tail light upon its truck as required by statute, and that the plaintiff Hamel was in the exercise of due care.   The only question upon this appeal from the action of the trial court in setting aside the verdict in each case is whether, upon the evidence presented, the jury could reasonably reach the conclusion upon the issues of negligence and contributory negligence which the verdicts imply.   It was undisputed that the truck was equipped with a tail lamp over the rear marker, the lamp and the marker being upon a bracket attached to the body of the truck, and that after the collision the bracket was bent down.   The plaintiff Hamel and two other occupants of his car testified that prior to the collision they saw no red light upon the rear of the truck.   Two witnesses produced by the plaintiff testified that after the accident they examined the tail lamp on the truck, that one of them put his finger in the socket of the lamp, and that there was no bulb in the socket.   Three witnesses produced by the plaintiff testified that the bracket to which the tail lamp and marker were at-

tached was an iron strip running horizontally under the body of the truck to which it was bolted, that this bracket was pulled away from the bottom of the truck to which it had been bolted, and was bent down at an angle of about forty-five degrees, so that if there had been a bulb in the socket the light would not have been visible from the rear since it pointed down toward the ground. These witnesses also testified that there was about a quarter of an inch of old caked mud in the angle between the bottom of the truck body and the bracket thus bent down, indicating, as the plaintiffs claimed, that this condition of the bracket, and of the lamp pointing down toward the road, had existed a considerable period of time prior to the accident. The defendant, on the other hand, produced witnesses who testified that a new bulb was placed in the tail lamp the afternoon of the accident, that the tail lamp was lighted when the truck left the garage that night, that after the collision there was a bulb in the lamp though the filament and the red glass of the lamp were broken, and claimed that the position of the lamp as claimed by the plaintiffs was the result of the collision.

In its memorandum of decision upon the motion to set aside the verdicts the trial court said that the evidence that the defendant had its truck equipped and illuminated as required by law was strong, clear and convincing. Whether it was so equipped and illuminated was a question of fact for the jury. That the tail lamp on the truck was in a position to furnish a warning to those approaching from the rear, contained a bulb, and was lighted at the time of the collision, were not indisputable physical facts. Though the court may have considered the evidence to that effect clear and convincing, evidence to the contrary, some of it from witnesses apparently disinterested, fur-

nished a conflict of evidence which it was within the province of the jury to resolve.

There was also attached to the rear cross member of the chassis of the truck a red reflector from four to six inches in diameter. It was conceded by counsel for the plaintiffs that this reflector was not attached to the bracket which carried the tail lamp and marker. This reflector was found bent back under the body of the car after the accident and the glass in it broken. If, as the verdicts import, the truck was not at the time of the accident equipped with a tail light in compliance with the statute, we cannot say as matter of law that, because of the presence of the reflector, the violation of the statute was not a proximate cause of the collision.

The verdict of the jury in favor of the plaintiff Hamel imported a finding that his own negligence was not a proximate cause of the collision. Upon his own testimony and the indisputable physical facts the jury could not reasonably have reached such conclusion. Both vehicles were proceeding upon the newly constructed concrete road down Southington Mountain. The grade was unusually heavy and the road straight for a long distance. Hamel testified that his car was equipped with headlights which were in good condition and which clearly disclosed objects that were two hundred feet ahead of him. He fixed the speed at which he was traveling at between twenty-five and thirty miles an hour. The defendant's truck was twenty-five feet long and eight feet wide, weighing six tons and carrying a load of six tons in addition. The evidence permits no other reasonable conclusion than that a reflector of red glass four to six inches in diameter was attached to the center of the rear cross section of the chassis of the truck in the position shown upon the photograph introduced in evidence by the

plaintiffs, and that it was bent back by the force of the collision, and the glass broken and scattered over the road. Hamel testified he did not see any red light and did not see the truck until he was within ten or fifteen feet of it. Granting that the body of the truck, in spite of its large bulk, might not have been clearly disclosed by the headlights of the Hamel car, although they threw sufficient light ahead to show, under ordinary conditions, an object upon the highway two hundred feet distant (*Schmeiske* v. *Laubin*, 109 Conn. 206, 145 Atl. 890), it is inconceivable that the reflection of the rays of his headlights from the red glass of the reflector upon the truck was not visible from Hamel's car long before he came into dangerous proximity to the truck. Just prior to the collision two cars were approaching from the opposite direction and Hamel testified that he was blinded by the bright headlights of the foremost of these cars which at the time of the collision was about to pass the truck. He also testified that if there was a car approaching him with bright headlights, and there was a red light in the road two or three hundred feet ahead, he could see the red light although the effect of the approaching lights was such as to prevent his seeing unlighted objects on the road at a distance of more than twenty feet, and that before he had run into the glare of the approaching headlights he had seen nothing on the road ahead of him. If he had been keeping a proper lookout he could not have failed to see the red light of the reflection of the rays of his headlights from the reflector upon the tail end of the truck before his vision was momentarily affected, if it was, by the glare of the headlights upon the approaching car. His failure to keep such a lookout was under the circumstances negligence which prevents his recovery. The negligence of the plaintiff Hamel was not attributable to Audette,

a passenger in the car, and does not prevent a recovery by the plaintiff Goulet, Executrix.

There is no error in the Hamel case. In the case of Goulet, Executrix, there is error, and the cause is remanded with direction to enter judgment upon the verdict.

In this opinion WHEELER, C. J., and HINMAN, J., concurred; MALTBIE, J., concurred as to the case of Goulet, executrix, and dissented in the Hamel case; HAINES, J., concurred in the result.